UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X **Docket#**
SINCLAIR, et al., : 17-cv-01058-DLI-VMS
Plaintiffs, :
:
- versus - : U.S. Courthouse
: Brooklyn, New York
:
TEA AT THE CENTER, INC., : April 18, 2017
Defendant :
-------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR VERA M. SCANLON
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

For the Plaintiff: **David C. Wims, Esq.**
Law Office of David Wims
1430 Pitkin Avenue
2nd Floor
Brooklyn, NY 11233

For the Defendant: **Donald Jay Pols, Esq.**
Beilis & Pols, P.C.
213 West 35th Street
Suite 800
New York, NY 10001

Transcription Service: **Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
laferrara44@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

THE COURT: All right. So this is Sinclair, et al. v. Tea At The Center, Inc., 17-CV-1058.

So let me first get plaintiffs' counsel's appearance first.

MR. WIMS: David C. Wims, Brooklyn, New York.

Good afternoon, your Honor.

THE COURT: Good afternoon. And with you?

MR. WIMS: With me are the plaintiffs, Alexander Zarlengo and Jerwayne Sinclair.

THE COURT: And for defendant?

MR. POLS: All right. Donald Pols, Beilis & Pols for the defendant, your Honor.

THE COURT: Okay. So for the plaintiffs, you may have already heard this or not, your case is one of those interesting procedural posture. So in general, and why we're here is that the appellate court, which is called the Second Circuit Court of Appeals has a case that says, in sum, that when there's settlements of Fair Labor Standards Act cases, the trial court, so the Court that you're in right now needs to look at the settlement and determine whether it's fair and reasonable and generally speaking, two criteria; one is, is it fair and reasonable as between each side and then is it fair and reasonable as between you and your attorneys.

Why I say we're at an interesting point is

there's some debate among the judges who handle these cases as to whether the way your case was resolved which is this Rule 68, all right. Basically, the defendants made an offer and you and your attorneys decided to accept the offer. There's a disagreement as to whether this approval process applies.

That being said, the trial judge on your case says this approval process applies. So we're going to do it. So it's just an interesting case and there are some interesting orders related to that in the record.

So what I have them in terms of the paper, just again so the record is clear is the filing on the docket at 9, which is filed April 11th, so it's the joint motion. Both sides are asking the Court to approve the Fair Labor Standards Acts settlement.

So in support of that, attached at 9-1 is Mr. Wims' declaration and the retainer agreement at 9-2 and actually it continues because there's two plaintiffs, two agreements and a copy of the docket. So the various expenses are there and then Mr. Wims -- I think this is your -- these are your time sheets, right, Exhibit 3? Right?

MR. WIMS: Correct, your Honor.

THE COURT: Okay. You can stay seated. It's actually easier for me to hear if you're closer to a

microphone. So if everybody just wants to pull it closer.

Okay. So that is the lay of the land. So for the -- just so the plaintiffs know, lawyers have done this either with me or other judges. What we're going to do is I'm going to ask each of the lawyers to just tell me their view on the settlement and then ask you some questions regarding whether you think it's a fair and reasonable settlement.

So, Mr. Wims, you're up.

MR. WIMS: Your Honor, this is obviously a FLSA action alleging unpaid overtime and the plaintiffs were former employees of the defendant restaurant. There were -- during their tenure, they worked in excess of 40 hours per week, pretty -- relatively frequently.

The defendant failed to make and keep contemporaneous time records during the plaintiff's tenures. So we had to attempt to reconstruct the "reasonable" amount of whatever the settlement raised based on my client's recollection and the disputed contentions of defendant's principals.

Based on the amounts of the tenure, we arrived at the figure that is -- we're asking you to approve which is $7,400 in total.

Mr. Sinclair worked for, I think, about 15

months, 16 months, somewhere around there. Mr. Zarlengo was there for about six months.

The -- interestingly, there was an (indiscernible) in this case that's directly relevant to Cheeks in that Mr. Sinclair, proceeding pro se in the fall of last year negotiated a resolution of his waived claims with the defendant directly, not with -- neither -- neither side had counsel in that transaction, I believe.

Then Mr. Sinclair and Mr. Zarlengo came to me and we were able to negotiate the resolution as we present to you today. We're asking first of all, based on our numbers, we think it's fair and reasonable under the circumstances. I explained to my clients the risks involved in litigating against -- just in litigation in general but more importantly here, where to prevail, the jury would have to find their recollection credible as to the number of hours worked and it could be a long time.

There were considerations as to the defendant's ability to possibly satisfy any judgment were it to be two years from now or whatever the case may be.

So counsel and I engaged in arms' length negotiations and arrived at the figures that have been submitted to the Court.

THE COURT: Okay. So just so I understand the

numbers. Looking at page 2 of your affidavit, so if Mr. Sinclair's view in connection with you, that he would have gotten $8,000but he negotiated $6,500 himself anyway. So this really -- just the $1,500 left. Am I reading this right or --

MR. WIMS: No.

THE COURT: Okay. Tell me what it would be.

MR. WIMS: The $8,000 was what -- based on what he says he worked, an hourly rate what we think his total recovery could have been minus the $6,500 that was paid to him directly and this settlement here, he would get -- we settled for an additional $4,000 less the fees. So --

THE COURT: Okay. So when you say his -- does the $8,000 include liquidated damages?

MR. WIMS: Yes.

THE COURT: Okay.

MR. WIMS: It does. There were some other claims that we sort of threatened to bring that also -- that we didn't include in the complaint that sort of brought the defendant's to the table as well but that's our calculation and so he's actually getting more than what could be recovered just with respect to overtime.

THE COURT: So the maximum overtime including liquidated damages would be $8,000?

MR. WIMS: Yes.

THE COURT: He got $6,500?

MR. WIMS: That's about -- previously, correct.

THE COURT: Previously.

MR. WIMS: And this pursuant --

THE COURT: And which would leave, to state the obvious, $1,500 unpaid --

MR. WIMS: Right. And he would get four pursuant to the settlement if it's approved, less the one-third of the term, which we said would be about $2,800.

THE COURT: Okay.

MR. WIMS: Mr. Zarlengo -- his recovery on this would be $3,000 gross, less the fee, would be $2,000.

THE COURT: Okay. And when you say his recovery would be $2,000 that also includes liquidated damages?

MR. WIMS: No, no.

THE COURT: All right.

MR. WIMS: I'm saying the $3,000 is what we calculate as what would be owed to him.

THE COURT: No. I'm sorry. So Zarlengo, paragraph 15, "If plaintiff Zarlengo incurred all unpaid overtime to which he claims entitlement which is disputed by the defendant, the total would be approximately $2,000. The amount he will get pursuant to instant

settlement is $3,000."

Is that $2,000 --

MR. WIMS: Oh, it should say 3, they both should say 3, in paragraph 15.

THE COURT: Uh-hum. Okay. So -- but that $3,000 is -- includes liquidated damages?

MR. WIMS: Yes.

THE COURT: Okay. So they're both getting -- let me just look at the numbers for a second. They're both getting a full recovery. All right. So then the obvious question, sorry to ask the awkward one, but that's why I am here, is why are their numbers different, particularly to the proportion, at least that they're recovering, right? Because it looks -- you have Mr. Sinclair basically is owed -- including liquidated damages, could get $1,500 but he's getting $4,000 and Mr. Zarlengo could get $3,000 including liquidated damages and that's what he is getting.

So obviously one party is getting more with regard to what's over and above what's still outstanding arguably, right? So why are the numbers proportionately different? Do they have different claims?

MR. WIMS: No, they both allege off-the-clock overtime work.

THE COURT: Uh-hum.

MR. WIMS: The -- we arrived at those numbers via negotiations. So without -- you know, we weren't -- I think we were just talking numbers as opposed to proportions of potential recovery. So, you know, Mr. Sinclair was there much longer at greater potential damages.

THE COURT: All right. I'm still confused as to why he had greater potential damages based on what you say here. I'm not saying there's not a reason. I just don't know what it is.

MR. WIMS: Why he had greater damages? His tenure was longer.

THE COURT: No, as -- this is - I'm just basing what I am asking based on what you say in your affidavit. So looking at paragraphs 14 and 15. According to 14, Mr. Sinclair was only owed at best $1,500 and yet he is getting $4,000.

MR. WIMS: Correct.

THE COURT: And Mr. Zarlengo is owed $3,000 at best, because I am saying that includes liquidated damages and he's getting $3,000. So why is Mr. Sinclair getting significantly more relative to his claim, than Mr. Zarlengo? There may be other claims that I don't know about or something but I mean, the point is whether the overall settlement is fair and reasonable and

obviously, that's -- there's a question.

And it might be they have other claims other than the overtime but that's not what it says here, so I am trying to understand.

MR. WIMS: Yeah, I'll -- I mean, that's -- from plaintiff's perspective, that's what we negotiated, your Honor. I mean, maybe defense counsel can shed some more light on why they consented to what they did.

THE COURT: Right. It was a Rule 68, right?

MR. POLS: Excuse me?

THE COURT: It was originally -- it's a Rule 68, right? So --

MR. POLS: Yes.

THE COURT: -- why are the numbers what they are?

MR. POLS: Well, this was from defendant's stand point. It was an overall negotiated settlement. I mean, we reconstructed records. We had the recollections of the supervisors as to, you know, the days that the facility was open and how long different people worked and it seemed to be from our stand point, a fair and reasonable number for the employer.

THE COURT: Okay. I still don't understand what the over arching principal that should be considered in terms of why the numbers are what the numbers are.

MR. POLS: Well --

THE COURT: And one plaintiff is getting a much higher recovery relative to what was allegedly owed him compared to the other and so to determine, you know, it's fair and reasonable, less concerned about why as comparing the two as much as it says, you know, basically on this, one is getting much higher damages and why isn't the other one getting that same, you know --

MR. POLS: Are you referring to Zarlengo's recovery of $4,000 --

THE COURT: Right. These are the numbers that are here. Sinclair was -- plaintiff Sinclair allegedly was owed $8,000. That, I understand includes liquidated damages which would mean if you applied the standard formula, he was claiming $4,000 in unpaid overtime plus -- right, and you double that for the liquidated damages He got $6,500.

MR. POLS: Right.

THE COURT: So he only had a claim of 15 -- in this lawsuit, he could only have had a claim of $1,500. So even though his claim is only $1,500, he's getting three times that -- more than three times. No, sorry, he's getting almost three times that.

MR. POLS: And --

THE COURT: He's getting $4,000.

MR. POLS: Your Honor, is your question why did we agree to pay him more than he may have been entitled to?

THE COURT: Well, the question is only is it fair and reasonable and I'm trying to -- I'm not trying to take any money back from anybody. I want to understand what it is that's being applied here because in one, the person is only getting the damages and -- right, the overtime damages and then the other there's extra money.

Now maybe there's other reasons and just nobody has articulated it which, you know, for example, the one that would leap out is you were just saying there wasn't -- not you but defendant's -- sorry, plaintiffs' counsel was saying there were not good records. And so if Mr. Sinclair was there longer, he might have a stronger claim for the claim that people make about penalties for poor record keeping but again, nobody is saying this, so really --

MR. POLS: I --

THE COURT: And maybe there's other information that I don't have that I just need you to put on the record.

MR. POLS: -- I --

MR. WIMS: I think I might be able to address

that, your Honor.

THE COURT: Okay.

MR. WIMS: Because defendants -- defense counsel and I came to different (indiscernible) notes --

THE COURT: Okay.

MR. WIMS: -- based on the numbers that were -- I mean, what I put in my affidavit is what my calculations are.

THE COURT: Uh-hum.

MR. WIMS: Counsel's were a little different and I think that's why Mr. Sinclair is getting more than my calculations are that he's owed in overtime.

THE COURT: Okay. So this is not prompted at all by plaintiffs' side but by the defendant's calculations? Is that right?

MR. POLS: Yes.

THE COURT: All right.

MR. POLS: From the plaintiffs' side, the plaintiff is looking to limit risks and hazards of litigation and legal fees --

THE COURT: The defendant.

MR. POLS: From the defendant's --

THE COURT: Right.

MR. POLS: -- side rather. The defendant is looking to limit risks and hazards of litigation and

legal fees. The defendant is not -- doesn't have a personal interest in how that settlement is allocated between the various plaintiffs.

THE COURT: Okay. All right. And then on the -- go ahead. Were you going to say something else?

MR. WIMS: I'm fine. No, no, go ahead, your Honor.

THE COURT: And then on the attorney's fees piece? You have the one-third retainer.

MR. WIMS: Yes. We have --

THE COURT: Plus costs.

MR. WIMS: -- a retainer agreement for one-third with both plaintiffs.

THE COURT: All right. And then your lodestar would be $2,800?

MR. WIMS: Correct. And then the -- on top of the $7,000 rate, so to speak, the defendant's (indiscernible) $400 costs that were advanced by my office with respect to the filing.

THE COURT: Okay. All right. So anything else for counsel and then I will just ask the parties some questions.

MR. WIMS: I have nothing further from plaintiffs' counsel.

MR. POLS: Nothing further from defendant's

counsel.

THE COURT: Okay. So -- this is for the individual plaintiffs. So what I have is I went over the documents and included in Mr. Wims' declaration explaining the basis of the settlement and from I think what we have been able to gather, there's a disagreement almost in your favor, really in plaintiffs' favor as to what the outcome of these claims might be.

And so I was trying to understand why the differences were here but focused on plaintiff's counsel and obviously the answer really seems to be here from the defendant's side.

So let me just ask each of you, so for each of you, did you ever read the complaint? Do you know what the document is that was filed with the Court saying what your claims are? Why don't you pull the microphones and just -- just if you could say your name before you -- just so that we could know who is speaking.

MR. SINCLAIR: Jerwayne Sinclair.

THE COURT: Okay. So did you read the complaint? That's the document that says what your complaints were?

MR. SINCLAIR: Yes.

THE COURT: And did you understand it?

MR. SINCLAIR: Yes.

THE COURT: Okay.

MR. SINCLAIR: And then Mr. Zarlengo, same thing. Did you read the complaint?

MR. ZARLENGO: Yes.

THE COURT: I think that mic isn't on.

MR. ZARLENGO: Yes.

THE COURT: There you go. And did you understand it?

MR. ZARLENGO: Yes.

THE COURT: Okay. And do you understand that there was an offer to settle the case? All right. The lawyer for the defendant, they offered you money to settle the case.

MR. ZARLENGO: Yeah.

THE COURT: And do you understand that?

MR. ZARLENGO: Yes.

THE COURT: So each of you has to answer for yourself.

MR. SINCLAIR: Yes, your Honor.

THE COURT: Okay. All right. And do you understand in settling the case, that means that your claims are completely finished if this settlement is approved?

MR. ZARLENGO: Yes.

THE COURT: Do you understand?

MR. SINCLAIR: Yes.

THE COURT: Okay. So in the same -- you know, before you were able to negotiate a settlement and then you came back and had the follow-up lawsuit, like that's not going to happen here. This is it. Do you understand that?

MR. ZARLENGO: Yes.

THE COURT: Each of you understand -- okay. And then so for Mr. Sinclair, do you understand that from the defendants, what you're going to receive which will later be divided between you and your attorney is the $4,000. Do you understand that?

MR. SINCLAIR: Yes.

THE COURT: All right. And then Mr. Zarlengo, do you understand you're receiving $3,000.

MR. ZARLENGO: Yes.

THE COURT: Can you say it closer to the mic?

MR. ZARLENGO: Yeah.

THE COURT: Okay. And then for each of you, is it right that you entered into a retainer agreement with your lawyer?

MR. ZARLENGO: Yes.

THE COURT: Okay, you did?

MR. SINCLAIR: Yes.

THE COURT: And do you understand that your

lawyer is going to be paid from the amount of money that you're each receiving from the defendants?

MR. SINCLAIR: Yes.

MR. ZARLENGO: Yes.

THE COURT: Okay. All right. So for each of you, are you in agreement with the settlement?

MR. SINCLAIR: Yes.

MR. ZARLENGO: Yes.

THE COURT: And are each of you satisfied with the work that your lawyer Mr. Wims did on your behalf?

MR. SINCLAIR: Yes.

MR. ZARLENGO: Yes.

THE COURT: Okay. Let me just talk to counsel about the logistics. Was the money paid? I know you have the order from the district judge not allowing the distribution but --

MR. WIMS: No, I followed the order, your Honor.

THE COURT: Okay. All right. So what will happen is that -- I'm not sure if it will be today but anyway, there will be an order entered recommending to the district judge that the settlement be approved because in this case, each of the plaintiffs is receiving very unusually, you know, all of the damages and then really you're getting not just the money, so the

plaintiffs understand but that there's a claim here that you're supposed to get some money for not being paid overtime and then there's a penalty in the law that you get twice that amount.

And through these negotiations, you're getting the whole amount. I have hundreds of these cases and that rarely happens. So you have a good settlement. And the obviously, you've got to pay your lawyer out of that.

All right. So anything else that should be said on the record here?

MR. WIMS: No, your Honor.

THE COURT: No?

MR. POLS: No. I have nothing further, your Honor.

THE COURT: No. You've got to answer out loud.

MR. SINCLAIR: No, thank you.

THE COURT: Anything?

MR. ZARLENGO: No.

THE COURT: Okay. So like I said, there will be an order and then the district judge will decide -- let me just ask the lawyers one practical question. My report and recommendation is going to recommend that this be approved because it's certainly a good settlement for the plaintiffs. You can agree to limit the time that you

have for objections, if you want to do that on the record.

MR. WIMS: Plaintiffs will waive their objections, your Honor.

MR. POLS: And the defendants will too, your Honor.

THE COURT: All right. So I will note that and it's still up to the district judge if she wants, you know, to accept the report and recommendation but I'll note that you waive the objections. All right. Thanks for coming in. Thank you for your patience.

MR. WIMS: Thank you, your Honor.

MR. POLS: Thank you, your Honor.

THE COURT: Have a good day.

(Matter concluded)

-o0o-

**C E R T I F I C A T E**

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **1st** day of **May**, 2017.

Linda Ferrara

AAERT CET**D 656
Transcriptions Plus II, Inc.